JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard
Michael DiGiulio
Leah M. Seliger

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

September 5, 2024

**VIA ECF**
Hon. Cathy Seibel
U.S. District Court for the Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

Re:   *Pamela Wimbish & Patricia Onken v. IBM*, No.: 23-cv-8327

Dear Judge Seibel,

We represent Plaintiffs in the above-referenced matter. We submit this letter pursuant to Rule 2.A. of the Court's Individual Practices to respectfully request a pre-motion conference on Plaintiffs' anticipated motion for leave to file an amended complaint. A "redline" draft of Plaintiffs' proposed amended complaint is attached hereto as Exhibit A.

Plaintiffs seek to add claims of disparate impact age discrimination under the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). As discussed below, Plaintiffs' proposed amendments are based on information developed in discovery and could not have been made prior to the Court's amendment deadline. Plaintiffs' request should be granted because: (1) the proposed amendments will not require further fact discovery or changes to the Court's existing schedule; (2) Plaintiffs have acted with diligence in seeking amendment as soon as practicable after learning the necessary facts in discovery; (3) the proposed amendments will not prejudice Defendant; and (4) the amendments are not futile.

**I.    Background**

Plaintiffs are two Human Resources professionals who were terminated from Defendant IBM, Inc. in an April 2023 reduction in force ("RIF"). *See* ECF Dkt No. 1 (Compl.) ¶¶ 44-45, 100. Plaintiffs' original complaint alleges claims of intentional age discrimination under, *inter alia*, the ADEA and NYSHRL. *Id.* ¶¶ 108-117. In particular, the complaint contains factual allegations regarding IBM's selection processes and criteria used in the RIF. *Id.* ¶¶ 46-49, 53-54, 61-64, 68-69, 103-06. While the complaint alleges that IBM "disproportionately terminated its older employees," *id.* ¶ 4, it does not allege separate claims of disparate impact age discrimination because, as also alleged, IBM has "formally adopted a policy and practice of not providing terminated employees over the age of 40 with demographic data concerning the names, ages, and roles of all employees slated for termination," *id.* ¶ 77.

In January 2024, this Court set a deadline of January 31, 2024 for seeking leave to amend. ECF Dkt No. 21 ¶ 2. In early April 2024, Defendant served its responses to Plaintiffs' discovery

requests and its first production of documents. As relevant here, Defendant produced: (1) the identities and demographic data for approximately 150 employees who were considered for inclusion in the RIF and whether they were selected; and (2) several spreadsheets containing smaller subsets of HR employees (approximately 77 including Plaintiffs) who were all considered together for inclusion in the RIF by the same group of selecting mangers.

In August 2024, Plaintiffs deposed three of the four managers who participated in the selection of Plaintiffs for the RIF (the deposition of the fourth manager is scheduled for September 6). Because the spreadsheets containing the smaller subsets of employees had several variances in the names of those who were considered and those who were ultimately selected, a goal of the depositions was to identify the "final" list containing (a) the complete "universe" of employees considered and (b) the final selection/non-selection determination as to each employee in that universe. At her August 16 deposition, Debra Adams (the HR manager who provided advice and guidance to the selection team) identified the final version of the spreadsheet containing every name included in the selection universe and every name of those who were ultimately selected.

## II.     Plaintiffs' Proposed Amendments

On August 28, Plaintiffs served Defendant with their proposed amended complaint. In it, Plaintiffs propose two additional claims for relief, one for disparate impact under the ADEA and the other for disparate impact under the NYSHRL. *See* Ex. A ¶¶ 133-144. It also proposes to add 10 paragraphs of additional factual allegations concerning (a) the demographic makeup of the "final" list, (b) the rate at which employees under age 50 were selected for the RIF as compared to the rate at which employees age 50 or older were selected, and (c) a comparison of the proportion of employees under age 50 who were selected for the RIF versus the proportion of employees age 50 or over who were selected. *See id.* ¶¶ 108-117.

## III.    Argument

When a party seeks to amend after an amendment deadline, the Court conducts a two-stage analysis. It first determines whether there is "good cause" to modify the scheduling order under Fed. R. Civ. P. 16(b). *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). If there is good cause, the Court then decides whether to permit the amended pleading under Fed. R. Civ. P. 15. *Lincoln v. Potter*, 418 F. Supp. 2d 443, 453-54 (S.D.N.Y. 2006).

"Under Rule 16(b), a party may obtain a modification of the scheduling order only upon a showing of good cause." *Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (quotation marks omitted). Factors relevant to good cause include "whether the moving party can demonstrate diligence" and "whether allowing the amendment of the pleading at this stage of the litigation will prejudice" the non-moving party. *Id.* at 244.

Good cause exists here. Plaintiffs could not have included disparate impact claims in their initial complaint because they did not have access to the demographic data necessary to plausibly allege that IBM's selection practices in fact caused a disparate impact on older employes. *See* Compl. ¶ 77. Plaintiffs also could not have added these claims prior to the Court's January 2024 deadline because the demographic data was not produced until April 2024 and the final selection universe was not identified until August 2024. Courts routinely find good cause to amend where the amendments seek to conform the pleadings to evidence produced in discovery and could not

have been made before the amendment deadline. *See Tree v. Hotel Credits, Inc.*, 2023 U.S. Dist. LEXIS 207591, at *11 (S.D.N.Y. Nov. 20, 2023) ("Because additional information learned through subsequent discovery is the basis for [the] request to amend after the deadline, the Court finds that good cause exists to permit the amendment at this time." (internal quotation marks omitted)); *Samad Bros. v. Bokara Rug Co.*, 2010 U.S. Dist. LEXIS 68701, at *7 (S.D.N.Y. June 30, 2010) (good cause existed where plaintiff moved to amend after receiving "additional relevant information" in discovery "that provided [plaintiff] grounds for seeking to amend its complaint").

Plaintiffs also acted diligently. Ms. Adams was deposed on August 16, less than one month before the filing of this letter. Courts routinely hold that longer timeframes are sufficient to show diligence. *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (good cause where plaintiffs learned of additional plaintiffs over four months before moving to amend); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (motion to amend made "within two months of acquiring the information" in discovery "sufficient to show diligence").

Nor will the addition of disparate impact claims prejudice Defendant. "An amendment may be prejudicial if it would (1) require the defendant to expend significant additional resources to conduct discovery, or would (2) significantly delay the resolution of the dispute." *Scott*, 300 F.R.D. at 200. Here, the amendments will not result in any additional fact discovery obligations on Defendant's part as all the necessary information has been produced. Nor will amendment delay the resolution of this matter because the only further discovery required is expert statistical analysis of the RIF, which Plaintiffs have already requested and would conduct even if their only claims were intentional discrimination. *See* ECF Dkt No. 29 (Letter re. Expert Discovery).

Finally, leave to amend should be freely given under Rule 15 unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed," undue prejudice to the non-movant, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). This is Plaintiffs' first request to amend and, for all the reasons set forth above, there has been no undue delay, bad faith, or undue prejudice. Nor would the disparate impact claims be futile. To prevail on a disparate impact claim, Plaintiffs must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012). While Plaintiffs need not present statistical evidence or prove the "methodological soundness" of their statistical assessment at the pleading stage, the "statistics must plausibly suggest that the challenged practice *actually* has a disparate impact." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209-10 (2d Cir. 2020).

Here, Plaintiffs' proposed complaint does just that by: (1) identifying Defendant's challenged RIF selection practices, Ex. A ¶¶ 46-49, 53-54, 61-64, 68-69, 103-06; and (2) demonstrating through a statistical assessment that application of those practices resulted in a statistically significant disparate impact on employees aged 50 or above, *see* ¶¶ 108-117. *See, e.g.*, *United States v. City of New York*, 637 F. Supp. 2d 77, 93 (E.D.N.Y. 2009) ("The Second Circuit has repeatedly recognized that standard deviations of more than 2 or 3 units can give rise to a prima facie case of disparate impact because of the low likelihood that such disparities have resulted from chance."). Accordingly, for all the above reasons, leave to amend should be granted.

Respectfully submitted,

_/s/Lucas C. Buzzard_
Lucas C. Buzzard