# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

Direct Number: +1.212.326.3496
ecagney@jonesday.com

May 13, 2025

VIA ECF
Hon. Cathy Seibel
U.S. District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

Re:   *Pamela Wimbish & Patricia Onken v. IBM, Inc.* (Case No.:7 23-cv-08327-CS)

Dear Judge Seibel:

Pursuant to Rule 2.A of the Court's Individual Practices, IBM respectfully requests a pre-motion conference in advance of IBM's Motion for Summary Judgment. Patricia Onken and Pamela Wimbish ("Plaintiffs") filed this action in September 2023 alleging age discrimination, based on disparate treatment, under the Age Discrimination in Employment Act (ADEA), the New York State Human Rights Law (NYSHRL) and the Atlanta Fair Private Employment Act. Dkt. 1. After the close of fact discovery, Plaintiffs amended their Complaint to add a disparate impact claim. Dkt. 47. All discovery is now closed.

## BACKGROUND

Plaintiffs are former IBM Human Resource ("HR") Partners who were selected in a reduction-in-force (in IBM terms, a "resource action" or "RA") in March 2023. At the time of the RA, IBM's HR Partner Organization was restructuring and rolling out a new HR Partner model. To determine who would be selected in the RA, Carol Gordon (Vice President, HR Partner Organization) solicited feedback from various HR executives to help assess the performance, skill, and fit for the new model of the HR employees in consideration for the RA. Ms. Gordon, along with Dina McDonald (Director, HR Leader U.S.), then made selection decisions. Ms. McDonald was Plaintiff Onken's first-line manager and Plaintiff Wimbish's second-line manager at the time of their selections. Ms. McDonald and Ms. Gordon decided, based on their performance, skills, and fit for the new model, to select Plaintiffs for separation in the RA.

## ARGUMENT

**Disparate Treatment**

Because Plaintiffs have no direct evidence of age discrimination, they must rely on circumstantial evidence using the *McDonnell-Douglas* framework. Under this framework, they must first establish a *prima facie* case by, among other things, showing that their separations

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Hon. Cathy Seibel
May 13, 2025
Page 2

occurred under circumstances giving rise to an inference of age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[1] Plaintiffs must also show that IBM's stated business reasons for each employment decision "were false, and that more likely than not [discrimination] was the real reason for the discharge." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996). Plaintiffs cannot establish a *prima facie* case and, even if they could, cannot establish pretext. First, Plaintiffs have proffered no evidence demonstrating that Ms. McDonald or Ms. Gordon harbored any age animus. Second, there is no evidence that younger employees were afforded preferential treatment in the RA—nor could there be, considering neither Ms. McDonald nor Ms. Gordon knew the ages of the employees they were assessing. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82-83 (2d Cir. 2005) ("[A] defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant."). Third, Plaintiffs were not replaced by anyone, let alone by someone significantly younger.

Even if Plaintiffs could establish a *prima facie* case, their claims still fail because they cannot show that IBM's legitimate business reasons for the decisions were pretextual. Ms. Gordon implemented a robust process. She gathered HR leaders across the business to provide their perspectives on each employee considered in the RA. After that, Ms. Gordon and Ms. McDonald decided who to select. Ms. McDonald knew both Plaintiffs well and concluded that their performance, skills, and fit for the new HR Partner model were not as strong as others considered. For example, Ms. McDonald found another HR Partner (who was 67 years old at the time) to be proactive and transformative and she was selected to stay at IBM and take on a new role in the new organization. The record contains no evidence that IBM's legitimate business reasons for the selections were pretextual or that age was a but-for factor for their selection. Plaintiffs merely disagree with the assessment. *Hamilton v. Mt. Sinai Hosp.*, 528 F. Supp. 2d 431, 440-41 (S.D.N.Y. 2007) ("To show that a non-discriminatory reason for an adverse employment action is pretextual, however, a plaintiff may not merely question the rationality of an employer's decision."). Accordingly, Plaintiffs' disparate treatment claims fail.

**Disparate Impact**

Plaintiffs also cannot establish a *prima facie* claim of disparate impact. To do so, they must prove 1) a specific, neutral IBM policy or practice, 2) the existence of a disparity between employees aged 40 and older and employees under age 40, and 3) a causal relationship between the disparity and the policy or practice. *See Doheny v. Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 364 (S.D.N.Y. 2024). To start, Plaintiffs fail to point to a specific, facially-neutral policy. Plaintiffs refer to two practices: 1) the non-inclusion of first-line managers in the decision-making process, and 2) the use of inherently subjective criteria to make RA selections. Dkt. 47 ¶ 155.

---

[1] "[C]ourts 'apply the same standards . . . under both [the ADEA and NYSHRL].'" *Pang v. Cushman & Wakefield*, 2022 WL 19410316, at *11 (S.D.N.Y. Aug. 23, 2022) (citation omitted).

**JONES DAY**

Hon. Cathy Seibel
May 13, 2025
Page 3

Neither satisfies Plaintiffs' burden. First, Ms. McDonald *was* the first-line for Ms. Onken and other employees considered in the RA and objective benchmarks such as performance ratings and time spent on education were data points in the selection process. Second, the use of allegedly subjective criteria is not a practice that can support a disparate impact claim here because it is an attack on the entire decision-making process. *Smith v. Xerox Corp.*, 196 F.3d 358, 368 (2d Cir. 1999) (holding "overall decision-making process" insufficiently specific to support disparate impact claim unless process is not "capable of separation for analysis"). Even if it could, Plaintiffs cannot plausibly rely on the same practice to support their disparate treatment *and* their disparate impact claims. *E.g.*, *Rossini v. Oglivy & Mather Inc.*, 798 F.2d 590, 605 (2d Cir. 1986) ("[P]laintiffs are trying to have it both ways. They argue, on the one hand, that the employee evaluation system at O & M is entirely subjective *and, therefore, inherently suspect*. On the other hand, in seeking to state a claim of disparate impact, they argue that the same subjective system *is facially neutral*.").

Next, Plaintiffs cannot demonstrate the existence of a statistically significant disparity on employees over 40 years old.[2] Plaintiffs' expert, Dr. Shapiro, ran inappropriate tests, applied an unscientific and antiquated "rule of thumb," and, in the most critical instance, misinterpreted the results of his own test. By applying the test correctly, IBM's expert found the result for employees over 40 years old to be under two standard deviations, which Dr. Shapiro agrees is the cutoff for statistical significance.

Finally, Plaintiffs cannot demonstrate a causal relationship between any neutral selection policy and any purported disparity. Indeed, they do not even try. Dr. Shapiro admitted that he did not study the alleged policies, the decision-making process or anything else concerning causation. *See Gallagher v. IBEW Local Union No. 43*, 2008 WL 4613758, at *5 (N.D.N.Y. Oct. 15, 2008) (finding statistical evidence insufficient to show causation where expert performed no causality testing of correlation between age and policy and where expert never actually analyzed policy). Therefore, Plaintiffs cannot establish causation.

Regardless, the alleged policies are based on reasonable factors other than age. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005). First, IBM had a legitimate reason not to involve all first-line managers. Many of those managers were themselves being considered for selection and the process was highly sensitive and confidential as the new model had not yet been announced. Second, even assuming the criteria were subjective, they were necessary to ensure IBM had the right HR Partners for the new model. Thus, Plaintiffs' disparate impact claims fail.[3]

---

[2] The Second Circuit requires that there be an adverse impact to "the entire protected group, *i.e.*, workers aged 40 and over." *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997).

[3] Plaintiff Onken asserts a disparate treatment claim under the Atlanta Fair Private Employment Act, which does not create a private right of action. Dkt. 47 ¶¶ 148-52; Atl. Code of Ordinances § 94-112. Plaintiff Wimbish asserts a claim of age-based disparate impact under the NYSHRL, which is non-cognizable. Dkt. 47 ¶¶ 159-64; *Bohlke v. Gen. Elec. Co.*, 293 A.D.2d 198, 200 (3rd Dep't 2002) (holding age-based disparate impact claim non-cognizable).

JONES DAY

Hon. Cathy Seibel
May 13, 2025
Page 4

                                                     Respectfully submitted,

                                                   /s/ *Erika D. Cagney*
                                                   Erika D. Cagney

cc:  All Counsel of Record (via ECF)